UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHEL WILLIAMS,

        Plaintiff,

                            Case No.  4:16-CV-11496

v.                            District Judge David M. Lawson
                            Magistrate Judge Anthony P. Patti

QUICKEN LOANS INC.,

        Defendant.

_____/


**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DE 33)**

**I.**     **RECOMMENDATION**:  The Court should grant Defendant Quicken

Loans Inc.'s Motion for Summary Judgment.  (DE 33.)

**II.**     **REPORT:**

    **A.**     **Procedural Background**

    Plaintiff Rachel Williams, who is proceeding without the assistance of

counsel, filed her Complaint, Application to Proceed *in forma pauperis*, and

Request for Service by the United States Marshal on April 26, 2016.  (DEs 1, 2, 3.)

The Court granted her application on April 28, 2016.  (DE 4.)  In her complaint,

Plaintiff alleges that she was not hired to work at Defendant Quicken Loans Inc.

1

(Quicken Loans) because she filed a previous charge of discrimination against Title Source, Inc. (Title Source)[1], and asserts claims of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Michigan Elliott-Larsen Civil Rights Act (ELCRA), MCL §§ 37.2010 *et seq.* (DE 1.) She seeks "an injunction order, monetary and punitive damages and attorney/court costs if incurred." (*Id.* at 2.)

This matter comes before the Court on Quicken Loans' motion for summary judgment, Plaintiff's response brief, and Quicken Loans' reply brief. (DEs 33, 35, 36.) Quicken Loans asserts that it is undisputed that Plaintiff never worked for Quicken Loans, but rather, was employed by Aerotek Staffing and temporarily assigned to work at Title Source for several months in 2012. (DE 33 at 17; 33-6 at 6-7.) Quicken Loans argues that Plaintiff has no direct evidence of retaliation and that she cannot establish a *prima facie* case of retaliation. (DE 33 at 18-23.) According to Quicken Loans, the undisputed evidence establishes that: (1) neither Jamiliah Darnell nor Jessica Miesel, the decisionmakers here, had any knowledge that Plaintiff had ever engaged in protected activity; and (2) there is no causal connection between Plaintiff's alleged protected activity and her "non-hire" at Quicken Loans. (*Id.*)

---

[1] Quicken Loans Inc. and Title Source, Inc. are both subsidiaries of Rock Holdings Inc. Title Source is a national residential and commercial title insurance agency, escrow-settlement service provider and vendor management company. Quicken Loans is a mortgage lending company. (DE 33 at 7 & fn. 2.)

Plaintiff opposes the motion and contends that she can establish the essential elements of a retaliation claim by circumstantial evidence. (DE 35.) She argues that she engaged in protected activity in 2013 when she filed a charge of discrimination with the Michigan Department of Civil Rights (MDCR) and subsequently a lawsuit against Title Source. (*Id.* at 17-18.) She disagrees that Ms. Darnell did not have access to Plaintiff's civil rights history because she contends that Quicken Loans management and the legal staff knew about her prior civil rights charge. She thus argues that she can present circumstantial evidence of Quicken Loans' knowledge that she had exercised her civil rights and consequently refused to hire or rehire her. (*Id.* at 18-19.) Plaintiff further contends that Quicken Loans has been inconsistent in its description of her "allegedly poor performance" leading to her termination by Aerotek Staffing in 2012, which provides evidence of a causal connection between her protected activity and the adverse action. She argues that the inconsistencies "points [sic] to pretext all to cover up [the] true reason for Plaintiff's denial of employment opportunities—due to Plaintiff['s] civil rights history." (*Id.* at 21-23.)

In its reply brief, Quicken Loans maintains that Plaintiff has not offered any admissible evidence to support her retaliation claim, but rather, summarily concludes that she was not considered for hire due to her previous civil rights charge history. (DE 36.) Quicken Loans reiterates that the undisputed evidence

demonstrates that neither Jamiliah Darnell nor Jessica Miesel had any knowledge that Plaintiff had ever engaged in protected activity. (*Id.* at 9.) Quicken Loans further argues that Plaintiff offers "nothing more than conjecture and alleged inconsistencies with a few word choices … that simply do not create a genuine issue of material fact" regarding a causal connection. (*Id.* at 10.)

### B. Factual Background

### 1. The Recruiting Function at Quicken Loans

The recruiting team at Quicken Loans works in a high-volume, fast-paced recruiting environment, and is responsible for identifying qualified candidates for employment at Quicken Loans. (DE 33-2 at 1.) The recruiting team receives information about potential candidates in a variety of ways, including job fairs, job boards, Quicken Loans' career website, and internal and external referrals. (*Id.*) A recruiter reviews hundreds of referrals and online applications each year and attempts to make contact with potential candidates the first time they express interest in employment at Quicken Loans. (*Id.* at 2.) Quicken Loans uses an electronic applicant tracking system called iCIMS, which is a software application that allows Quicken Loans to collect and store candidate data and track and monitor the process of candidates through the stages of the hiring process. (*Id.*) Among other things, iCIMS collects resumes, generates email to job applicants, and allows recruiters to make notes about contacts with potential candidates. (*Id.*)

However, the recruiting team does not have access to civil rights complaints or the civil rights charge history of any applicant, and such information is not part of the recruiting or hiring process at Quicken Loans. (*Id.*)

### 2. Plaintiff's October 2014 Contracts with Quicken Loans About Employment

On October 1, 2014, Plaintiff sent an email with her resume attached to Bruce Schwartz, the Detroit relocation ambassador for Bedrock Real Estate Services LLC, stating that she was given his business card and that she was interested in employment with Quicken Loans. (DE 33-5, 33-7.) Plaintiff testified that she had never met Mr. Schwartz, did not receive the business card from him, and cannot remember how or when she received the business card. (DE 33-6 at 12-13.) Plaintiff indicated in her email that she previously worked for Title Source, Inc. as a mortgage auditor. (DE 33-5.) Mr. Schwartz immediately forwarded the email to the recruiting team at Quicken Loans, and the matter was assigned to recruiter Jamiliah Darnell. (DE 33-2 at 2-3, 9-11.) Ms. Darnell immediately called Plaintiff and left her a voicemail message to return the call, and then documented the call in her contact notes. (*Id.* at 3, 14.) That same day, Ms. Darnell triggered iCIMS to send an email to Plaintiff and provide her with Ms. Darnell's contact information. (*Id.* at 3, 16.) Further, because Plaintiff's email stated that she previously worked at Title Source, Ms. Darnell also initiated a "New Rehire Report Card" (a "rehire ticket") for Plaintiff to ascertain whether she

was eligible to be rehired at Quicken Loans. (*Id.* at 3-4, 18-19.) It is standard practice for the recruiting team to generate a rehire ticket when it has information that a potential candidate previously worked for Quicken Loans or one of its Family of Companies. (*Id.* at 4.) According to Ms. Darnell, when she entered Plaintiff's name in Step 1 of the rehire ticket, the "status" box at the top of the page indicated something to the effect of "Review required by TR [Team Relations]." (*Id.* at 4.) Ms. Darnell completed Steps 2 and 3 of the rehire ticket with Plaintiff's information, and then submitted the New Rehire Report Card to Team Relations and documented the submission in her contact notes in iCIMS. (*Id.* at 4, 13.)

The New Rehire Report Card was assigned to Jessica Miesel in Team Relations on October 2, 2014, and Ms. Miesel was required to complete Step 5 of the rehire ticket. (DE 33-4 at 1-2, 7-8.) Ms. Miesel has access to a software application called "UltiPro" that stores limited information regarding the reasons a former team member was separated from employment. (*Id.* at 2.) The information stored in UltiPro regarding Plaintiff's 2012 temporary assignment stated: "Assignment ended due to performance. Not rehirable." (*Id.* at 2, 10.) Ms. Miesel inserted this information in the first three fields of Step 5 of the New Rehire Report Card. (*Id.* at 2, 8, 10.)

Ms. Miesel also spoke with a team leader at Title Source to obtain feedback about Plaintiff's job performance. The team leader reported that Plaintiff was

unable to perform the job functions during her temporary assignment at Title Source and that she would not rehire Plaintiff because she was unsuccessful in multiple roles. (*Id.* at 3, 8.) Ms. Miesel then reported that information in the next to the last section of Step 5 of the New Rehire Report Card. (*Id.* at 8.) Ms. Miesel then completed the rehire ticket by responding "No" to the final question in Step 5: "Do you approve of this rehire?" (*Id.*) On October 2, 2014, Ms. Miesel submitted the completed New Rehire Report Card, which was returned to Ms. Darnell that same day, with the "status box" in Step 1 reflecting that Plaintiff was ineligible for rehire. (DE 33-2 at 5, 18; DE 33-4 at 8.) "Based solely on the information provided on the New Rehire Report Card," Ms. Darnell contemporaneously recorded in her notes "'rehire ticket attached−candidate is not rehirable.'" (DE 33-2 at 5, 13.)

In response to Ms. Darnell's initial contacts on October 1, 2014, Plaintiff called and left a voicemail message for Ms. Darnell. (DE 33-2 at 5.) Ms. Darnell attempted to return Plaintiff's call but was unable to leave a message and instead received an automated message that said "@ the subscribers [sic] request this person is unavailable." (*Id.*) Ms. Darnell documented this attempted contact and automated message in her notes. (*Id.* at 5-6, 13.) Ms. Darnell was not contacted by Plaintiff again, and on October 14, 2014, Ms. Darnell declined Plaintiff in the

iCIMS system because of her lack of follow-up, and made the following note: "Candidate Withdrew – Lack of Candidate Follow-Up." (*Id.* at 6, 13.)

### 3. Plaintiff's 2015 Contacts with the Online Career Portal

On or about February 24, 2015, Plaintiff used Quicken Loans' online career portal to express an interest in a customer service representative position at Quicken Loans. (DE 33-2 at 6, 21.) And, on April 2, 2015, Plaintiff used the online career portal to express an interest in an Accounts Payable Specialist position at Bedrock Management Services. (*Id.*) During a "pipeline cleanout" in July 2015, Plaintiff was declined in the system for both positions after her profile remained in submission status for three months without any contact. (*Id.* at 6, 13.) Quicken Loans states that Plaintiff would not have been considered eligible for these positions based on her "Ineligible for Rehire" status. (*Id.* at 7.) Neither of these subsequent employment inquiries, however, were addressed in Plaintiff's March 5, 2015 EEOC charge, the November 24, 2015 Investigative Report, or the November 24, 2015 Notice of Disposition and Order of Dismissal. (See DEs 33-13, 33-14, and 33-15.)

### 4. Plaintiff's EEOC Charge

On March 5, 2015, Plaintiff signed an EEOC charge, in which she alleged that she was denied hire by Quicken Loans on December 11, 2014, in retaliation for previous civil rights complaints. (DE 33-13.) Specifically, she alleges that she

was told by an unnamed Quicken Loans' recruiter that she cannot work for Quicken Loans, and that she believes she is "being 'blacklisted' from receiving a position with [Quicken Loans], because [she] engaged in protected activity." (*Id.*) Plaintiff's charge was investigated by the MDCR, and the MDCR investigator concluded that the case should be dismissed for insufficient evidence. (DE 33-14.) Accordingly, the Commission dismissed Plaintiff's charge for insufficient evidence on November 24, 2015. (DE 33-15.)

## C. Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen her obligations under Rule 56. Rather, "[t]he liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading

stage do not apply after a case has progressed to the summary judgment stage."

*Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010)

(citations omitted).  The Sixth Circuit has made clear that, when opposing

summary judgment, a party cannot rely on allegations or denials in unsworn filings

and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary

judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th

Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001)

(affirming grant of summary judgment against a *pro se* plaintiff because he "failed

to present any evidence to defeat the government's motion").

**D.     Discussion**

**1.     Title VII Retaliation Claim**

Title VII prohibits discriminating against an employee because that

employee has engaged in conduct protected by Title VII.  *See* 42 U.S.C. § 2000e-

3(a).  A Title VII retaliation claim can be established "either by introducing direct

evidence of retaliation or by proffering circumstantial evidence that would support

an inference of retaliation."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th

Cir. 2014) (citation omitted).   Where, as here, the claim is based on circumstantial

evidence, the Court employs the burden-shifting framework set forth in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *See also Texas Dep't of*

*Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (clarifying the

*McDonnell Douglas* burden-shifting framework). "Cases brought pursuant to the [Elliott-Larsen Civil Rights Act] are analyzed under the same evidentiary framework used in Title VII cases." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004); *Cox v. Elec. Data Sys. Corp.*, 751 F.Supp. 680, 690 (E.D. Mich. 1990).

Following that framework, in order to make out a claim of retaliation under Title VII or the ELCRA, a plaintiff bears the initial burden to establish a *prima facie* case of retaliation. *See Laster*, 746 F.3d at 730. To establish a *prima facie* case of retaliation, a plaintiff must show that: "1) he engaged in activity protected by Title VII; 2) his exercise of such protected activity was known by the defendant; 3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and 4) a causal connection existed between the protected activity and the materially adverse action." *See id*. (citations omitted). If the plaintiff succeeds in making out the elements of a *prima facie* case, "the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions. If the defendant satisfies its burden of production, the burden shifts back" to the plaintiff to demonstrate that the defendant's proffered reason was not the true reason for the employment decision. *Id.* "Although the burden of production shifts between the parties, the plaintiff

bears the burden of persuasion throughout the process." *Id.* (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)).

### 2. Plaintiff Fails to Make a *Prima Facie* Case of Retaliation

Defendant Quicken Loans argues that it is entitled to summary judgment because there is no direct evidence of retaliation and Plaintiff cannot establish a *prima facie* case of retaliation. Quicken Loans does not dispute that Plaintiff engaged in protected activity by filing a charge of discrimination against Title Source. However, Quicken Loans argues that Plaintiff fails to establish a *prima facie* case of retaliation under Title VII and the ELCRA because: (1) there is no genuine dispute of material fact that the decisionmakers here, Ms. Darnell and Ms. Miesel, lacked knowledge of Plaintiff's protected activity; and thus (2) Plaintiff is unable to prove a causal connection between the alleged protected activity and her "non-hire."

#### a. Plaintiff Has Not Presented Evidence That the Decisionmakers Had Knowledge of Plaintiff's Protected Activity

First, Plaintiff cannot establish the second prong of her *prima facie* case—that "the individuals charged with taking the adverse employment action knew of the protected activity." *See Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002). An employment decision cannot be considered retaliation for protected activity if the decisionmaker did not know about the protected activity. *See id.* at 551-54.

Defendants have presented undisputed evidence that neither Ms. Darnell nor Ms. Miesel had any knowledge that Plaintiff had ever engaged in protected activity. The affidavits of both Ms. Darnell and Ms. Miesel are consistent on that point. (See DE 33-2 at 5; 33-4 at 3-4.) Significantly, Plaintiff conceded at her deposition that she does not have any evidence to dispute this:

> Q. Okay. Paragraph seven – this is Ms. Darnell – I had no knowledge of any civil rights charge that Ms. Williams may have filed. Do you see that first sentence in paragraph seven?
>
> A. Yes.
>
> Q. All right. Do you have any information, any evidence, any facts, any knowledge that would dispute what Ms. Darnell is saying in that first sentence of paragraph seven?
>
> A. I don't have – I don't have anything. To the best of my knowledge, I don't have any information.
>
> Q. That would dispute that?
>
> A. That would show that she had knowledge of it.
>
> Q. The second sentence, she indicated that she doesn't have any knowledge of any civil rights charge history for any applicant because that information is not available to the recruiting team and is not used as part of the hiring process. Do you see that?
>
> A. Yes.
>
> Q. Do you have any information that what she's saying there is untruthful?
>
> A. To the best of my ability, I can't dispute that, because as I said, I don't know what she has in her possession.

(DE 33-6 at 14-15.)

Plaintiff contends in her response brief, without any support, that "Quicken Loans management as well as their attorneys" had knowledge of Plaintiff's civil rights history. As Quicken Loans argues, even if this is true, this knowledge cannot be imputed to the decisionmakers here because notice to someone in management of an employee's protected activity, without proof of actual notice to the decisionmaker, is legally insufficient to establish that the decisionmaker intentionally retaliated against the employee. *See Mulhall*, 287 F.3d at 552 (affirming summary judgment where plaintiff failed to produce evidence to rebut denials of knowledge about protected activity by decisionmakers). It is the decisionmaker, the individual who actually took the adverse action, who must be shown to have had knowledge of protected activity. *See Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999) (summary judgment was appropriate where plaintiff had not "met her burden of showing that her protected activity was known to those who made the decision"); *see also Newton v. Meijer Stores Ltd. P'Ship*, 347 F.Supp.2d 516, 524 (N.D. Ohio 2004) (plaintiff's argument that "the employer clearly knew about the plaintiff's filed EEOC charge because they had to answer to it and provide details to the investigative team" did not constitute evidence that the individual decisionmakers themselves knew of his EEOC charge when they were making the decision to terminate him, and summary judgment was appropriate).

Plaintiff also claims that recruiters have access to civil rights charge history because recruiters "have contact with [the] legal department" as stated on the New Rehire Report Card. (DE 35 at 8, 28.) However, as Quicken Loans points out in its reply, the statement on the rehire report that "If this rehire is not approved by legal, you will only receive that information" is not evidence that the legal department considers civil rights charge history *or* that the legal department provides recruiters with any information about civil rights charge histories (DE 36 at 5), particularly in the face of the undisputed statements by Ms. Darnell and Ms. Miesel that they were not given access to that information. Rather, this amounts to nothing more than unsupported conjecture by Plaintiff insufficient to defeat summary judgment. *See Mulhall*, 287 F.3d at 552. In sum, "[w]here a decision-maker accused of retaliation lacked actual knowledge that the plaintiff employee engaged in Title VII protected activity, then the defendant employer cannot be held liable for retaliation under Title VII." *See Seay v. TVA*, 340 F.Supp.2d 832, 841 (E.D. Tenn. 2004) (citing *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1156 (11th Cir. 2002) and *Mulhall*, 287 F.3d at 551-54).

Similarly, Plaintiff's reference to alleged statements made by Aerotek employees in audio recordings and emails in December 2014 telling Plaintiff that "she can't work for their client(s) Quicken Loans/Title Source" fail to raise a genuine issue of disputed fact as to whether the decisionmakers here, Ms. Darnell

or Ms. Miesel, had knowledge of Plaintiff's civil rights charge history. Ms. Darnell and Ms. Miesel have provided undisputed statements that they did not have knowledge of Plaintiff's charge history, and the alleged statements by Aerotek employees does not rebut that evidence. Plaintiff has failed to produce any evidence, direct or circumstantial, to rebut these denials. Instead, she only offered "conspiratorial theories," not "specific facts." *See Mulhall*, 287 F.3d at 552 (citing *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc) (holding that summary judgment was appropriate where the inferences plaintiff sought to draw from evidence were akin to "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from [personal] experience")). Her unsupported assertions that Ms. Darnell's or Ms. Miesel's knowledge must be inferred from knowledge possessed by others (in the Legal department or management or outside employers) is not a permissible inference as to the element of knowledge that is required to establish a retaliation claim.

Thus, as in *Mulhall*, Plaintiff has "failed to produce evidence sufficient to establish that the officials taking the adverse employment action knew of h[er] protected activity" at the time they took the action, *see Mulhall*, 287 F.3d at 554, and Quicken Loans is entitled to summary judgment.

> **b.** **Plaintiff Has Not Presented Evidence of a Causal Connection**

Second, even if Plaintiff could establish that the decisionmakers knew about her protected conduct, she cannot establish the fourth prong of her *prima facie* case—that a causal connection existed between her protected activity against Title Source and Quicken Loans' response to her employment inquiries. "'Title VII retaliation claims must be proved according to traditional principles of but-for causation[,]'" which in this case requires proof that Quicken Loans would have hired/rehired Plaintiff if she had not filed the EEOC charge against Title Source. *See Williams v. Serra Chevrolet Automotive, LLC*, 4 F.Supp.3d 865, 877 (E.D. Mich. 2014) (quoting *University of Texas Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013)). Generally, "a temporal connection [between the protected activity and the adverse action] coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection." *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006); *see also Williams*, 4 F.Supp.3d at 879 (holding "temporal proximity alone is not enough to allow a reasonable inference of 'but-for' causation, an essential element of Plaintiff's Title VII and ELCRA retaliation claims").

Quicken Loans asserts first that this is not the type of case where temporal proximity can establish causal nexus because Plaintiff initiated her EEOC charge against Title Source over one year before she first reached out to Quicken Loans to inquire about employment opportunities. (DE 33 at 15-16 (citing *Mickey v. Zeidler*

*Tool & Die Co.*, 516 F.3d 516, 525-26 (6th Cir. 2008).)  Quicken Loans further

argues that Plaintiff cannot establish this fourth element of a *prima facie* case of

retaliation because the undisputed evidence demonstrates that Plaintiff's profile

was declined in October 2014 because of her lack of follow-up, she was declined

in July 2015 for two positions because her profile had remained in submission

status for three months without any contact, and that she would not have been

considered eligible for positions at Quicken Loans because the inquiry made to

Team Relations indicated that she was unable to perform her job functions and was

unsuccessful in multiple roles.  (DE 33-2 at 6-7.)  Thus, Plaintiff's protected

activity played no role in those decisions.  And, Quicken Loans continues,

Plaintiff's deposition testimony confirms she has no "but-for" evidence of

causation.  She testified that the sole basis for her retaliation claim is that she

previously worked for Title Source, filed a charge of discrimination against Title

Source, and then applied for work at Quicken Loans but did not receive a job there.

(DE 33-6 at 16-18.)  She admits that she otherwise has no facts or evidence that

any employment decision at Quicken Loans was made because of her protected

activity.  (*Id.*)

In response, Plaintiff argues that the lapse in time between her protected

activity and Quicken Loans actions does not defeat causation, relying on

*Templeton v. First Tennessee Bank, N.A.*, 424 F. App'x 249 (4th Cir. 2011). (DE

35 at 21-22.)  The court in *Templeton* found that the plaintiff stated a viable Title

VII retaliation claim, despite the passage of approximately two years between her

protected activity and the employer's refusal to rehire her.  *Templeton*, 424 F.

App'x at 251.  The court reasoned that because Templeton resigned her

employment shortly after she complained of harassment, she was retaliated against,

if at all, upon the employer's first opportunity to do so—when she expressed her

interest in being rehired.  *Id*.  However, aside from the fact that *Templeton* is a

decision by the Fourth Circuit and thus is not controlling on this Court, it also

involved the appeal of the district court's dismissal of the plaintiff's retaliation

claim at the motion to dismiss stage, not a motion for summary judgment, and the

court acknowledged that "a Title VII plaintiff is not required to plead facts that

constitute a prima facie case in order to survive a motion to dismiss."  *Id.* at 249-

50.  The legal standard applicable to a motion to dismiss and the legal standard

applicable to a motion for summary judgment are decidedly different, in that under

a motion to dismiss the court must accept all well-pleaded facts in the complaint as

true, while the court goes beyond the complaint and considers the proper Rule 56

evidence on summary judgment.

     Plaintiff's testimony makes clear that she bases causation solely on temporal

proximity:

> Q.     Do you have any facts, evidence – and I'm talking about
>          documents – any facts, evidence, information, or knowledge

> that any employment decision at Quicken Loans was based on
> the fact that you had previously filed an MDCR charge or an
> EEOC charge against Title Source?
>
> A.    Well, the evidence is that I never was considered for
> employment of any kind after applying.  So that's evidence
> based on their actions.
>
> Q.    Anything other than that?
>
> A.    No.

(DE 33-6 at 17-18.)

Under the stricter "but-for" causation standard, temporal proximity, standing alone, is not enough.  *See Williams*, 4 F. Supp.3d at 879; *see also Mathews v. Massage Green LLC*, No. 14-cv-13040, 2016 WL 1242354, at *16 & n.10 (E.D. Mich. Mar. 30, 2016) (collecting cases holding that "but for" causation is required to make out a *prima facie* retaliation claim under Title VII).  Rather, the court has "always looked at the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn."  *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400-01 (6th Cir. 2010).  Plaintiff must offer some "other indicia of retaliatory conduct" giving rise to a finding of a causal connection.  *Id.* (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006)); *see also Williams*, 4 F.Supp.3d at 879.

Plaintiff here has not offered any "other indicia of retaliatory conduct" beyond her self-serving conjecture that she was not hired in retaliation for

engaging in protected activity (see DE 33-6 at 16-18), and Quicken Loans has offered ample, undisputed evidence that problems with Plaintiff's prior job performance and her failure to follow-up were the "but-for" cause of the decision not to hire her. Plaintiff points to no admissible evidence that these reasons are pretextual. Instead, she merely complains in her response brief that Quicken Loans uses the terms "entry-level positions" and "entry-level roles" when describing her "allegedly poor performance," contending that "[t]here is a clear distinction between a "role" and a "position" on a job, and that these inconsistencies "point to pretext[.]" (*Id.* at 22-23.) However, Quicken Loans' use of the terms "roles" versus "positions" to describe Plaintiff's former employment do not create a genuine dispute of material fact regarding causation. *See St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000) (irrelevant or unnecessary factual disputes do not create genuine issues of material fact). As the Court of Appeals has clarified: (a) a fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001); (b) "[m]ateriality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000); and (c) an issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (citation omitted).

Similarly, to the extent Plaintiff argues that there is a "discrepancy" between Ms. Darnell's affidavit submitted during the 2015 MDCR proceeding (stating that she declined Plaintiff in the system on October *13*, 2014) and her affidavit submitted in support of Quicken Loans' motion here (stating that Ms. Darnell withdrew Plaintiff's candidacy on October *14*, 2014), I find any such discrepancy immaterial. Rather, the date difference is likely, as Quicken Loans explains, a typographical error, and more importantly, not material to the causation analysis. *See St. Francis Health Care Centre*, 205 F.3d at 943.

Accordingly, Plaintiff has not presented evidence sufficient to raise a genuine issue of material fact in support of the causation element of her *prima facie* case of retaliation, and Quicken Loans is entitled to summary judgment.

### c. Whether Plaintiff Suffered a "Materially Adverse Action"

Quicken Loans also makes a passing argument in its brief that Plaintiff cannot demonstrate that she suffered an "adverse employment action" because she did not apply for a specific open position at Quicken Loans, but "simply expressed an interest in working there." (DE 33 at 19.) Plaintiff asserts in response that she was "led to believe there was a position in accounting/finance … [and] Ms. Darnell never told [her] there was never an accounting/finance position open." (DE 35 at 19.) First, arguments such as this that are undeveloped may be treated as waived. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation and internal quotation marks omitted). In any event, the Court notes that the third element of the *prima facie* case of a retaliation claim requires a "materially adverse action" rather than an "adverse employment action." *See Laster*, 746 F.3d at 731 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (modifying the third element to require a "materially adverse action" rather than an "adverse employment action")). An action is considered to be retaliatory if it is "materially adverse," meaning that the action might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See id.* The Sixth Circuit has explained that "Plaintiff's burden of establishing a materially adverse employment action is 'less onerous in the retaliation context than in the anti-discrimination context.'" *Id.* (citations omitted). "This more liberal definition permits actions not materially adverse for purposes of an anti-discrimination claim to qualify as such in the retaliation context." *Id.* at 732 (citations omitted). Because I find that Quicken Loans is otherwise entitled to summary judgment because Plaintiff has failed to satisfy the second and fourth prongs of her *prima facie* case, I will not make a finding here whether Plaintiff's inquiries about employment generally, without regard to a specific open job

position, raise a genuine issue of material fact regarding whether Plaintiff suffered a "materially adverse action."

### E. Conclusion

Defendant Quicken Loans' motion for summary judgment should be **GRANTED** because Plaintiff cannot establish a *prima facie* case of retaliation under Title VII or the Michigan ELCRA, and Plaintiff's claims should be **DISMISSED with prejudice**.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 15, 2017
s/ Anthony P. Patti
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE


**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on December 15, 2017, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti